[Crim. No. 9041.   Second Dist., Div. One.   Dec. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JUAN PEREZ ALVAREZ, Defendant and Appellant.

J. M. Sinclair for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In a nonjury trial the defendant was adjudged guilty of burglary of the second degree. An allegation that he had been convicted in 1958 of forgery, a felony, was found to be true. He appeals from the judgment and the order denying his motion for a new trial.

A burglary was committed at the home of Mrs. Delgado, at 120 West Avenue 28 in Los Angeles, on December 15, 1962, between 4 p.m. and 7 p.m. The back window screen was torn

and the latch had been pulled off the door. Her television and her Christmas gifts had been stolen, closets had been opened, and various articles in the house had been thrown on the floor.

Mrs. Delgado testified that: The next morning, when she went into her back yard, she saw tennis-shoe footprints in a dirt or sand area by the side of her house. On the other side of the yard fence, that is, in her neighbor's back yard, she saw the same kind of footprints in dirt or sand, which prints were "going" both ways—toward her house and away from it. The neighboring property is a two-story apartment building—with one apartment downstairs and one upstairs. She (witness) saw similar footprints in the dust on the outside stairway leading to the back door of the upstairs apartment. She went up to and knocked on the back door of that apartment but there was no answer. The defendant lived in that apartment. On the porch or platform at the top of the stairway she saw and picked up an earring which was similar to an earring which she had. On the next afternoon (Sunday), while she was looking in a closet of her child's bedroom, she found a key therein by the side of some suitcases. The closet had been disturbed during the burglary. Later that afternoon, when the police were at her house, she gave the earring and key to them. A photographer from the police department came to her house and took pictures of the footprints. (Photographs of the footprints were received in evidence as exhibits 3, 4, 5, 6, and 7.)

Officer Collier testified that: On December 16, about 4 p.m., when he was at Mrs. Delgado's house she gave him the earring and the key which she had found. He saw footprints in the back yard of the Delgado house, as indicated by exhibits 3 and 4. He also saw several similar footprints in the back yard of the apartment building next door, which prints were leading toward and away from the fence between the two houses, as indicated by exhibits 5 and 6. He followed the prints to the concrete which was dusty from soot and he could see footprints leading to the stairway in the back. On the back stairway he saw prints of a shoe toe, with a perforated or round dent in the dust or soot, leading upstairs. He went up the stairway to the back door and, using the key which Mrs. Delgado had given him, unlocked the back door but did not go inside. The defendant was not at home at that time. Soon thereafter he saw the defendant unlocking the front door of the upstairs apartment, and he also saw Mrs.

Vasquez there with him. (She also lived in that apartment.) He (officer) asked defendant whether he had ever been in the yard next door, and pointed to the yard of Mrs. Delgado. Defendant replied, "No." When the officer asked for permission to check the house, the defendant replied, "No." The officer told him that he was under arrest for burglary. Then the officer went upstairs and into the apartment where he found a pair of tennis shoes under the bed in the front bedroom. The name "John Alvarez" was on one of the tennis shoes. Then the officer said to defendant, "I thought you said you didn't have any tennis shoes." At that time Mrs. Vasquez (who also lived there) said to defendant, "I told you you were going to get in trouble and all you did was laugh at me." When she made that statement, the defendant remained quiet.

Defendant did not testify.

Mrs. Perez, called as a witness by defendant, testified that: She lived in the downstairs apartment of the apartment building which was next door to Mrs. Delgado's house. She was in charge of renting the upstairs apartment. When Mrs. Vasquez rented the upstairs apartment, Mrs. Perez gave her two keys—one for the front door and the other for the back door. The key, exhibit 2 (which was found in Mrs. Delgado's house), is the key to the back door of the upstairs apartment. More than a week before the burglary, Mrs. Perez gave Mrs. Vasquez another key for the front door. Defendant also lived in the apartment where Mrs. Vasquez lived. Mrs. Perez did not give them an extra key for the back door.

Mrs. Vasquez, called as a witness by defendant, testified that: When she and defendant came to the front door of her home on said December 16, about 4 p.m., she started to open the door with her key, and at that time two officers came there and showed their badges, and one of them said, "Well, let's go in." Defendant asked whether they had a search warrant. They did not say anything up to that time. When the officers came up as she was starting to open the door, she left the key in the door, and the defendant reached for the key. At that time an officer held defendant's arms and the other officer turned the key and pushed defendant into the house. The officers took them upstairs, and said that they had enough evidence against him. She got the key, exhibit 2 (which was found in Mrs. Delgado's house), from the manager, Mrs. Perez, who had given her two keys—one for the front door and one for the back door. The only person who

had the back door key was her 8-year-old son (Mrs. Perez' son), who kept it about a week and returned it to her. She did not give that key to the defendant, but she gave him the front door key. After the back door key was lost, she got another front door key from the manager. She had not seen the back door key for approximately six weeks before the burglary. Defendant had moved into the apartment about six months before he was arrested.

Sandra Robledo, daughter of Mrs. Delgado, called as a witness by defendant, testified that she lives with her mother; she never saw the key (exhibit 2) except when her mother showed it to her; the son of Mrs. Vasquez had come to Sandra's house only when he borrowed something for his mother; and she did not know whether he played with keys.

Rebecca Robledo, 13-year-old daughter of Mrs. Delgado, called as a witness by defendant, testified that her mother showed the key (exhibit 2) to her; she never saw the son of Mrs. Vasquez play with keys, and she never visited him.

██ Appellant asserts that the evidence was insufficient to support the judgment. His argument is that where the presence of articles, such as the key and earring, is ''reasonably explainable by the movements of children in the area,'' and ''where the possibility of explaining them by any agency of the burglar is complicated and difficult to follow,'' the court is precluded ''from using such presence to establish guilt.''

There was no evidence that the conduct of children caused the key or earring to be in the place where it was found.

There was evidence that defendant's footprints were in the back yard of the house where the burglary occurred, and were in the back yard of the apartment building where he lived, and were on the stairway leading to the back door of his apartment. The footprints were tennis-shoe prints, and the defendant stated falsely that he had not been in the back yard of Mrs. Delgado's house, and that he did not own tennis shoes. Such shoes were found under the bed in his apartment and his name was on one of the shoes. When the officers found the shoes and then referred to defendant's statement that he did not own such shoes, Mrs. Vasquez said that she had told him that he was going to get into trouble. At that time defendant did not say anything. Such false statements indicate consciousness of guilt. (See *People* v. *Osslo,* 50 Cal. 2d 75, 93 [323 P.2d 397].) The key which was found in a ransacked closet of the burglarized house was a key to the back door of the defendant's apartment.

The evidence was sufficient to support the judgment.

The order denying the motion for a new trial is not appealable.

The order denying motion for a new trial is dismissed. The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.